**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE HUMANE SOCIETY OF THE UNITED
STATES
    2100 L Street N.W.
    Washington, D.C. 20037

       *Plaintiff*,

       *v.*

THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
    1200 Pennsylvania Ave. N.W.
    Washington, D.C. 20460

       *Defendant*.

Case No. 1:14-cv-0840

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Freedom of Information Act, 5 U.S.C. § 552

## I.     INTRODUCTION

1.     The Humane Society of the United States (hereinafter "Plaintiff" or "HSUS") brings this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. In conformity with the FOIA, the HSUS requested records from the United States Environmental Protection Agency (hereinafter "Defendant" or "EPA") related to the participation of specific parties in a voluntary administrative agreement, the Animal Feeding Operation Consent Agreement and Final Order ("Air Consent Agreement"). In a subsequent but related request for records pursuant to the FOIA, the HSUS additionally requested information from EPA related to its administration of the HSUS Air Consent Agreement FOIA requests.

2.     EPA has violated, and continues to violate, the FOIA by failing to adequately respond to the HSUS' properly submitted records requests and by unlawfully withholding from public disclosure information sought by the HSUS, information to which it is entitled and for which no

COMPLAINT                                       1

valid disclosure exemption applies. The HSUS now respectfully requests for the Court to declare that EPA has violated the FOIA and to compel the immediate release of the requested records.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the action pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(6)(C)(i). This Court also has jurisdiction over the action under 28 U.S.C. § 1331 (federal question).

4. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

5. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## III. PARTIES

6. Plaintiff HSUS is a nonprofit organization headquartered in the District of Columbia and incorporated in the State of Delaware. The HSUS is the largest animal protection organization in the United States, representing millions of members and constituents. The HSUS brings this action on behalf of itself and its members.

7. Since its establishment in 1954, the HSUS has worked to combat animal abuse and exploitation and to promote animal welfare. In doing so, the HSUS actively advocates for better laws to protect animals and the environment; conducts mission-specific campaigns; and advocates against practices that injure, harass or otherwise harm animals, including farm animals and wildlife.

8. Defendant EPA is an agency of the United States government, within the meaning of 5 U.S.C. § 552(f)(1), and has a duty to provide public access to documents in its possession, consistent with the requirements of FOIA. EPA has possession and control of the records

requested by the HSUS.

## IV.    LEGAL FRAMEWORK

9.    The FOIA requires agencies of the federal government, upon request, to release information to the public, unless the agency can demonstrate that one of nine enumerated disclosure exemptions applies. 5 U.S.C. §§ 552(a), (b). The scope of federal information that is considered public and subject to release under the FOIA is broad. 5 U.S.C. §§ 552 (a)(2).

10.    The FOIA imposes strict deadlines on agencies to respond to FOIA requests. 5 U.S.C. § 552 (a)(6)(A). The FOIA obligates an agency responding to a FOIA request to issue a determination on the request within twenty business days of receipt (the "determination deadline"), and, if the agency decides to comply with the request, to make the requested records promptly available. 5 U.S.C. §§ 552(a)(6)(A)(i); (a)(3)(A).

11.    The agency may extend the twenty-day determination deadline by up to ten business days if "unusual circumstances" exist. 5 U.S.C. § 552(a)(6)(B). "Unusual Circumstances" is a narrowly defined term. 5 U.S.C. §§ 552(a)(6)(B)(iii). In the event of delay, the agency is to provide the requestor with written notice of the applicable unusual circumstance(s), and "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i).

12.    In certain exceedingly "unusual circumstances," the FOIA allows an agency, through written notification and communication with the requestor, to invoke an extension beyond ten business days. 5 U.S.C. § 552(a)(6)(B)(ii). When requesting a longer extension, an agency must provide the requester with the expected date on which the final determination will be provided. 5 U.S.C. § 552(a)(6)(B)(i).

13.    An agency may exempt records from disclosure pursuant to 5 U.S.C. § 552(b)(5) ("FOIA Exemption 5") if they contain "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency." This exemption is to be narrowly construed and is limited to legally privileged documents.

14.     In the event a FOIA exemption applies, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).

15.     Upon final determination on a FOIA request, a requestor can administratively appeal an agency's failure to disclose public records, and, as necessary, may thereafter petition the court for injunctive and declaratory relief from the agency's continued, improper withholdings of the requested records.  5 U.S.C. §§ 552(a)(4)(B); (a)(6).  If an agency fails to provide a timely final determination, the requester is deemed to have constructively exhausted the available administrative remedies, and may file suit directly, seeking relief from the agency's withholding without first administratively exhausting the claim.  5 U.S.C. § 552(a)(6)(C)(i); 40 C.F.R. § 2.104(a).

16.     An agency that withholds public records from a requestor under the FOIA bears the burden of sustaining the legality of its action.  5 U.S.C. § 552(a)(4)(B).

## V.     FACTUAL BACKGROUND

### The Animal Feeding Operation Consent Agreement and Final Order

17.     EPA administers numerous environmental laws, including the Clean Air Act; the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"); and the Emergency Planning and Community Right-to-Know Act ("EPCRA").

18.     In early 2005, EPA published a notice in the Federal Register that it was offering owners and operators of Animal Feeding Operations ("AFOs") an opportunity to sign a voluntary consent agreement and final order in exchange for the agency providing participating parties

with certain enforcement immunities and safe harbors from compliance with the Clean Air Act, CERCLA, and EPCRA.  The agreement, also known as the "Air Consent Agreement," was organized into two main sections, each of which was connected to a specific payment provision.

19.     Under the first section, EPA assessed against a participating party a payment amount that was to be premised on the population size(s) and the specific number of AFO facilities that the party entered into an agreement.   Under the second section, a participating party was to pay an additional fee of approximately $2,500 per facility into a fund to finance a related monitoring study ("Monitoring Fund").

20.     Payments made under the first section of the Air Consent Agreement were to be paid to the United States Treasurer, and were to include a transmittal letter with, at a minimum, the respondent's name, address, and agreement number(s).  A copy of the payment and transmittal letter was to be additionally filed with EPA.

21.     Upon information and belief, similar notification and copies of payment and transmittal information were to be filed with EPA in relation to payments made into the Monitoring Fund.

22.     Signed Air Consent Agreements were approved in large batches by the Environmental Appeals Board ("EAB"), a public, administrative tribunal.   In total, approximately 2,600 Air Consent Agreements, representing nearly 14,000 AFO facilities, were approved by the EAB.

23.     No Air Consent Agreement was the result of or subsequent to an adversarial adjudicatory process brought by EPA against any specific AFO.

*HSUS' 2012 FOIA Requests Concerning the Air Consent Agreement*

24.     On October 16, 2012, the HSUS made a request under the FOIA for records held or otherwise maintained by EPA concerning a limited subset of Air Consent Agreements ("Request One").   The request sought "all records" in EPA's custody concerning the involvement,

participation, contribution, or other association of ten identified AFO facilities in the Air Consent Agreement.

25.     The HSUS received notice from EPA that Request One was received by the agency on October 16, 2012, and was assigned tracking number "EPA-R4-2013-000575" (subsequently reassigned as EPA-HQ-2013-000575).

26.     On October 19, 2012, the HSUS submitted a second FOIA request to EPA ("Request Two").   This request similarly sought "all records" in EPA's custody concerning the involvement, participation, contribution, or other association of five additionally identified AFO facility owners in the Air Consent Agreement.

27.     The HSUS received notice from EPA that Request Two was received by the agency on October 22, 2012, and was assigned tracking number "EPA-R5-2013-000696" (subsequently reassigned as EPA-HQ-2013-000696).

28.     While EPA did not officially aggregate Request One and Request Two, it has responded to the requests in a consolidated fashion.

29.     On December 18, 2012, the HSUS received the first of two consolidated "interim" responses to Request One and Request Two.  The response provided to the HSUS a subset of the requested information.

30.     EPA also invoked the "unusual circumstances" exception to the FOIA in its December 18 response, identifying January 7, 2013 as its new determination deadline for providing a final determination on the Requests.

31.      On the afternoon of January 7, 2013, EPA requested an additional forty-five day extension for responding to the HSUS requests.  It also requested that the HSUS narrow the scope of the requests.

COMPLAINT                                                                                          6

32.     Between January 7, 2013 and February 08, 2013, the HSUS and EPA discussed, at length, the scope of the requests.   During those discussions, EPA provided the following "[i]llustrative [e]xample[s]" of the types of records that were responsive to the HSUS requests:

> "EPA asking its contractor to correct typographical and other formatting issues in the summary penalty calculation and emission unit tables that were filed as a part of [the EPA Office of Enforcement and Compliance Assurance's ("OECA")] Environmental Appeals Board (EAB) filings; … OECA communicating with the Agency's finance office regarding questions about payment of penalties, penalty amounts, incorrect payment amounts, incorrect mailing addresses, etc.; … OECA instructing Agreement Respondents regarding penalty payment issues, etc., in situations where Respondents may have lost Agreements or where Respondents may never have received notice that the EAB had ratified their Agreements and payment of penalties was due, etc.; [and] … OECA communicating with the Humane Society regarding Hanor- and Decoster-related Agreements."

33.     During this time period, EPA represented that it had identified over 10,000 pages of information that were responsive to Request One and Request Two.

34.     On February 13, 2013, the HSUS agreed to limit the scope of its request by relieving EPA of its responsibility to produce records related to editorial changes to penalty calculation tables and communications between the HSUS and OECA relating to Request One and Request Two, detailed *supra*.   In that communication, the HSUS confirmed that it would like to receive all other records responsive to the requests, including all records contained within the other document categories identified by EPA.   *See* Para. 32. This scoping decision was confirmed in written communications between the HSUS and EPA on multiple occasions.

35.     On April 4, 2013, the HSUS received an electronic message from EPA invoking additional "unusual circumstances," and asking the HSUS to extend the determination deadline to May 17, 2013.   EPA's stated justification for the delay included: the need "to search for, collect, and appropriately examine a voluminous amount of separate and distinct records[.]"

36.     On the evening of May 17, 2013, rather than providing the HSUS with a final

determination and production on its requests, EPA provided the HSUS with a "supplemental interim response" to Request One and Request Two.  EPA stated in that response that it anticipated producing additional responsive records "shortly."  EPA's stated justification for the further delay was the need to review records responsive to the Requests.  Attached to the May 17 response were seven records that were either not publicly available on EPA's website or that the Agency had not previously provided.

37.     Nearly a month and a half later, on June 25, 2013, EPA provided its "final response to FOIA Requests #1 and #2."   In that determination, EPA noted that it was "withholding approximately 43 responsive documents and approximately 173 responsive emails pursuant to" FOIA Exemption 5.  Regarding the other approximately 9000 pages of information that the agency had previously identified as being responsive to the request, and which the agency had relied upon in justifying its numerous delays under the FOIA, EPA offered only silence. The letter provided that the determination could be administratively appealed within thirty calendar days.

38.     In the final response, EPA did not provide the HSUS with information sufficient to discern what records it had withheld; a clear and particularized rationale for the withholding; or a reasonable application of FOIA Exemption 5 to the withheld materials.  Rather, EPA generally stated that it was withholding responsive records under FOIA Exemption 5 because the records had previously only been shared by EPA "on a need-to-know basis" and because some of those records were prepared in anticipation of (an undisclosed) litigation.  Reasonably segregable, non-exempt portions of records were also not produced.

39.     On July 16, 2013, the HSUS timely submitted to EPA an administrative appeal to the June 25 final response.  In relevant part, the HSUS appealed EPA's response on the grounds that

the agency's search for (and subsequent production of) records was inadequate; that its withholdings under FOIA Exemption 5 were unsubstantiated and improper; and for its failure to produce reasonably segregable portions of the withheld records.

40.     On August 20, 2013, EPA Office of General Counsel ("OGC") provided its answer to the HSUS July 16 administrative appeal.  In that answer, EPA granted the HSUS' appeal as it related to the adequacy of the agency's search for responsive records, and denied the appeal as it related to the agency's withholdings under FOIA Exemption 5 and its failure to produce reasonably segregable portions of the withheld records.

41.     In granting the portion of the HSUS administrative appeal relating to the adequacy of EPA's search for records, the OGC ordered OECA to conduct a second search for records.  On September 9, 2013, the HSUS received a letter and additional response from EPA containing a few additional responsive records.  Even with that additional production, the total volume of records provided to the HSUS was less than one-tenth of the 10,000 pages that EPA originally estimated. The letter did not provide notice of any additional right of administrative appeal.

42.     At no time during its production of records on December 18, 2012, May 17, 2013, June 25, 2013, or September 9, 2013 did EPA produce records related to the payment of fees assessed under the relevant Air Consent Agreements by participating parties.  Upon information and belief, EPA should possess and control at least the following responsive records: transmittal letters confirming the payment of fees; draft balance sheets concerning outstanding fees; spreadsheets concerning received civil penalties; and other documents dealing with the payment of fees by the parties identified in the Requests.

43.     In total, EPA has produced just under 900 pages of responsive records.

COMPLAINT                                                                                                          9

*HSUS' 2013 Request For Records, Including Communications and Other Materials,*
*Relating to Request One and Request Two*

44.     On July 17, 2013, the HSUS made a request under the FOIA for records held or otherwise maintained by EPA that concern Request One and Request Two, as well as: (1) records regarding the confidential business information review process (including inquiry, notice, processing, analysis, and determination) undertaken by EPA in relation to Request One, Request Two, and a subsequent, related, request; and (2) records related to a set of notice of intent to sue letters sent by the HSUS to certain AFOs on July 10, 2012 ("Request Three").

45.     The HSUS received notice from EPA that Request Three was received by the agency on July 22, 2013, and was assigned tracking number "EPA-HQ-2013-008468."

46.     Based on EPA's written notice, the twenty-day determination deadline for Request Three should have been August 19, 2013.

47.     On August 21, 2013, the HSUS received a letter from EPA requesting, in relevant part, an extension of its response deadline until October 31, 2013.  As support for its request, EPA invoked one of the "unusual circumstances" exceptions, alleging that it merited an extension for responding to Request Three because it has "identified approximately 2,000 potentially responsive records and approximately 70 potential record custodians, who are located across a total of nine EPA Program Offices and Regions."

48.     On September 6, 2013, the HSUS responded to the agency's August 21 letter and questioned the reasonableness of the agency's protracted extension for responding to the request.

49.     On September 11, 2013, EPA responded to the HSUS communication by invoking an additional "unusual circumstances" exception.  This second exception was based on the allegedly "voluminous" amount of potentially responsive records – an estimated amount that did not appear to have changed since EPA's August letter – and provided that it would "be able to

COMPLAINT                                                                                                         10

complete its response to your FOIA Request by December 2013."

50.       On December 23, 2013 – more than six months after receiving the HSUS request, EPA provided the HSUS with an "interim response" to Request Three.

51.       The "interim response" produced for the HSUS approximately two hundred and forty-four pages of records, about one-eighth of the estimated volume of responsive records.  Timothy Sullivan, who is employed at the headquarters of EPA, appears to have been the primary custodian of the records produced.  Timothy Sullivan was also the originator of the August 21, 2013 and September 11, 2013 communications from EPA to the HSUS requesting an extension in relation to Request Three.

52.       The "interim response" did not provide the HSUS with an understanding of how and to what extent EPA intends to further respond to Request Three, including by providing an approximation of the documents that the agency plans to withhold or redact.

53.       The "interim response" did not offer the HSUS an estimated time frame by which EPA would provide a final determination to Request Three.

54.       The "interim response" did not provide the HSUS with notice of any right to administratively appeal the response to the head of the agency.  Quite to the opposite, the response provided that it would be premature for the HSUS to appeal at that time because EPA had yet to issue a final determination on Request Three.  No other responsive records have been provided to the HSUS.

55.       To date, no final determination has been provided to the HSUS resolving Request Three.

56.       EPA has provided no additional estimated deadline by which it intends to provide the HSUS with a final response to Request Three.

COMPLAINT                                                                                          11

## VI. CAUSES OF ACTION

### COUNT I: IMPROPER WITHHOLDING OF AGENCY RECORDS PURSUANT TO 5 U.S.C. § 552(b)(5) AND FAILURE TO PROVIDE REASONABLY SEGREGABLE PORTIONS OF RECORDS THAT ARE NOT EXEMPT.

57.     The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

58.     The HSUS has a statutory right to have its FOIA Requests processed by EPA in a manner that complies with the FOIA.  5 U.S.C. § 552(a)(3).

59.     By withholding records under FOIA Exemption 5 that are responsive to Request One and/or Request Two, outside of the scope of FOIA Exemption 5, and properly sought by the HSUS pursuant to the FOIA, EPA is in violation of the FOIA.  *Id.*

60.     Under FOIA, EPA bears a heavy burden to establish that the claimed exemption applies to the records that it continues to withhold.  5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action.").  In the present case, EPA has not met the burden necessary to justify its withholding of records under FOIA Exemption 5 nor has it provided reasonably specific detail to explain that the information withheld logically falls within the claimed exemption.

61.     In the event FOIA Exemption 5 reasonably applies to any of the 216 known documents and emails that EPA is currently withholding, it must provide the HSUS with any releasable and reasonably segregable non-exempt portions of those records.  5 U.S.C. § 552(b).

62.     The HSUS has exhausted its administrative remedies with respect to this claim.

63.     The HSUS is entitled to injunctive relief to compel the production of all non-exempt, responsive record.

## COUNT II: FAILURE TO CONDUCT A REASONABLY ADEQUATE SEARCH FOR RESPONSIVE RECORDS

64.     The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

65.     The HSUS has a statutory right to have EPA process its FOIA requests in a manner that complies with the FOIA.  The HSUS' rights in this regard were violated when EPA failed to conduct an adequate search for records responsive to Request One and Request Two.  5 U.S.C. § 552(a)(3).

66.     EPA is required to conduct a search for records that is reasonably calculated to discover all relevant documents.  A review of the records produced by EPA in response to Request One and Request Two demonstrates that EPA failed to disclose records falling into numerous categories of information that the agency itself identified as being responsive to the Requests.

67.     Over the course of addressing these requests, EPA has estimated that it possesses or maintains over 10,000 pages of records responsive to Request One and Request Two.  Yet, as of the date of this Complaint, EPA had produced only an estimated 900 pages of records, or about ten percent of the estimated total volume of responsive records.  This discrepancy suggests that EPA identified a large number of responsive records that it has failed to produce for the HSUS and to which it has not otherwise claimed a FOIA exemption.

68.     Indeed, despite the fact that the relevant parties (AFOs and EPA) were entering into long-term administrative consent agreements, the records that EPA produced include only a very limited number of communications between the parties relating to the agreements.  This defies logic, especially in light of the submission requirements for an AFO party to voluntarily participate in the Air Consent Agreement; the purported agency evaluation of each volunteering party; the fact that EPA was to make a subjective fee assessment for each Air Consent

COMPLAINT                                                                                    13

Agreement, based on the number and size of the participating party's included AFO facilities; the agency administration of the agreement and its related monitoring study; and the Air Consent Agreement's purported ongoing safe harbor for participating parties from compliance with significant environmental laws.

69.     Further, EPA failed to identify any substantive documents that would relate to the payment of fees by the relevant participating AFOs.  As fees are required for the AFOs to participate in the Air Consent Agreement, this strongly suggests that EPA failed to conduct an adequate search for records.

70.     The HSUS has exhausted its administrative remedies with respect to this claim.

71.     The HSUS is entitled to injunctive relief to compel a lawfully adequate search for, and production of, responsive records.

### COUNT III: FAILURE TO PROVIDE NON-EXEMPT PUBLIC RECORDS

72.     The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

73.     The HSUS has a statutory right to have EPA process its FOIA Requests in a manner that complies with the FOIA.  The HSUS' rights in this regard were violated when EPA failed to promptly and completely provide the HSUS with all of the records responsive to Request One and Request Two that are public and non-exempt.  5 U.S.C. § 552(a)(3).

74.     Aligned with the HSUS' claim, *supra*, concerning the adequacy of the agency's search for responsive records, the agency's production of less than ten percent of the estimated volume of responsive records strongly indicates a failure to produce for the HSUS all non-exempt public records that are otherwise responsive to its FOIA requests.

75.     Conversations with EPA on this subject support this claim.  Records that would be contained within many of the categories of information that EPA itself identified as being

COMPLAINT                                                                          14

responsive to the Requests were never disclosed to the HSUS.  For example, upon information and belief, EPA did not produce all relevant records related to the payment of fees (and/or any questions, corrections, balance sheets and/or personal instructions) subject to the Air Consent Agreements, as described by EPA.

76.     The HSUS has exhausted its administrative remedies with respect to this claim.

77.     The HSUS is entitled to injunctive relief to compel the production of all records responsive to its requests.

### COUNT IV: FAILURE TO PROVIDE A LAWFUL RESPONSE AND FINAL DETERMINATION TO REQUEST THREE

78.     The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

79.     The HSUS has a statutory right to have EPA process its public records requests in a manner that complies with the FOIA.  It has been nearly ten months since the HSUS submitted FOIA Request Three, and it is still awaiting a final determination and production of records.

80.     EPA is well beyond the time limits for lawfully responding to and providing a final determination on Request Three.  5 U.S.C. § 552(a)(6)(A).

81.     EPA's actions in responding to Request Three have repeatedly been untimely.  For example, beyond failing to provide the HSUS with a timely final determination on Request Three, EPA has failed to provide the HSUS with any schedule for its production of additionally responsive records; indication as to what records it plans to withhold from the HSUS and the reasons therefore; or indicated what, if anything, is keeping EPA from meeting its statutory obligations under the FOIA of timely response and record production.

82.     There is no reasonable basis for the agency's failure to issue a timely final determination on Request Three and to fully produce all responsive, non-exempt records.

83.     As of the filing of this complaint, EPA has produced approximately one-eighth of its estimated volume of records responsive to Request Three, and all of the produced records appear to have originated from one source at the EPA headquarters.  The quantity and source of the records produced differs significantly from those estimated by EPA (i.e. 2000 documents) in invoking an "unusual circumstances" extension.

84.     EPA's failure to make a final determination on the HSUS' FOIA Requests within the statutory timeframe or within any agreed-upon extension means that the HSUS has constructively exhausted its administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i); 40 C.F.R. § 2.104 (a).

85.     The HSUS is entitled to injunctive relief to compel the production of all records responsive to this request.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1.      Declare as unlawful EPA's withholding of requested information under Exemption 5 of the FOIA;

2.      Declare as unlawful EPA's withholding of requested information for which no FOIA exemption has been claimed;

3.      Declare as unlawful EPA's failure to make timely determinations on the HSUS' information requests;

4.      Declare that EPA's search for records response to Request Two was not reasonably adequate;

5.      Order EPA to promptly provide the HSUS with all of the documents sought in this action which are not subject to any FOIA exemption, including any reasonably segregable

COMPLAINT                                                                                              16

portions of records which are non-exempt;

      **6.**     Exercise close supervision over EPA as it processes the HSUS' requests;

      **7.**     Award the HSUS its reasonable attorneys' fees and costs pursuant to 5 U.S.C. §

552(a)(4)(E).

      **8.**     Grant any such further relief as the Court may deem just and proper.

Dated this 21st day of May, 2014.


                                             Respectfully submitted,


/s/ Hannah Connor
Hannah Connor (District of Columbia Bar No. 1014143)
Peter Brandt (District of Columbia Bar No. 982936)
The Humane Society of the United States
2100 L Street NW
Washington, DC 20037
(202) 676-2354
(202) 676-2357 (facsimile)
hconnor@humanesociety.org
pbrandt@humanesociety.org

Daniel C. Snyder (Oregon State Bar No. 105127), *Pro Hac Vice* pending
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
(541) 344-3505
dan.tebbuttlaw@gmail.com

*Counsel for Plaintiff Humane Society of the United States*

COMPLAINT                                                                17